## OLIVER J. OLSON & CO. v. UNITED STATES.

No. 46232.

Court of Claims.

May 5, 1947.

Alan B. Aldwell, of San Francisco, Cal. (Brobeck, Phleger & Harrison and James S. Moore, Jr., all of San Francisco, Cal., and J. Raymond Hoover, of Washington, D. C., on the brief), for plaintiff.

Leavenworth Colby, and John F. Sonnett, Asst. Atty. Gen. (J. Frank Staley and Harry C. Shiver, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

JONES, Judge.

The sole issue in this case is the value of the steel schooner Cynthia Olson on December 7, 1941.

The plaintiff was the owner of the vessel. On November 18, 1941, she was chartered to the Army Transport Service for a term of six months, and was being operated by that service at the time the loss occurred.

The vessel was sunk by enemy action in the Pacific Ocean on December 7, 1941.

The defendant concedes liability. The question is the amount that shall be paid, with the value of the schooner as the measure of damages.

The vessel was built in 1919. She was purchased by plaintiff in 1930 for the sum of $113,000, including sales tax. An additional $69,900 was spent on repairs and improvements to put her in first class condition for the coastwise lumber trade in which plaintiff was then engaged.

Plaintiff maintained the Cynthia Olson in good condition. She had been placed in dry dock in November 1941 where she was overhauled, cleaned, painted, received minor repairs, and was certified by the American Bureau of Shipping. Soon thereafter she was chartered by the Army Transport Service.

The original cost of the vessel is not disclosed. The reproduction cost, as an individual vessel, on the day of the sinking was $1,300,000, which according to the Martin scale—5% per annum on diminishing balances—made the reproduction cost $420,656.58.

In May 1941 the hull and machinery was insured for $160,000 which on November 19, 1941, was increased to $200,000. The premiums for a six-month period amounted to $7,397.26 which was paid by plaintiff.

The plaintiff submitted a claim in the sum of $346,600. The Adjutant General on recommendation of the Chief of Transportation advised that the amount could not be justified and offered a total of $200,000 in settlement. This was rejected by plaintiff. It renewed its claim for $346,600 plus the amount of the insurance premiums for the six-month period.

As usual the opinions of the experts differed widely. Plaintiff's expert, Captain Pillsbury, said the value was not less than $325,000; the defendant's expert, Captain Jeans, placed the value at approximately $200,000. This is about the only conflict in the testimony. The circumstances are generally agreed upon. These are factual. But the expert witness lives in a different realm. He is not limited to the facts. He may give his opinion. He sometimes deals in hypotheses and postulates. He is sometimes not even hampered by the facts. Somewhere in this shadowland of blended truth, opinion, and imagination the court must undertake to ascertain the real facts.

Fortunately in this case both expert witnesses were well informed men, skilled in their profession. When the accepted facts of the case and the conditions prevailing are laid alongside these opinions as to reasonable and market values a rather clear conclusion can be reached as to the value of the vessel on Pearl Harbor day.

The days before Pearl Harbor were a period of rising values. For several months prior thereto, however, the market for vessels flying the flag of the United States was restricted (1) by the necessity of securing the approval of the United States Maritime Commission and (2) by the Ship Warrants Act. 50 U.S.C.A.Appendix, § 1281 et seq.

There were no sales of American-flag vessels of the size and type of the Cynthia Olson during the year 1941 in either the foreign or the domestic market. There was a demand in both markets. But the fact that a great war was on in the old world, the steadily increasing international tension, the tax rates applicable to capital gains, and the increasing degree of government regulation all tended to slow down the sale of vessels.

While there were some sales in 1940, and some negotiations in 1941, the evidence is not sufficient to establish a clear market value for craft of the type and size of the Cynthia Olson at the time of her destruction.

■ Considering all the evidence and circumstances, including the intrinsic worth of the vessel, the demand for vessels of this type, the prevailing conditions, the restricted market, the increasing regulation, the temporary earning power, and other pertinent facts disclosed by the record as well as the finding of the Commissioner who saw the witnesses and heard the testimony and whose finding as to value we approve and adopt, we find that the fair and reasonable value of the Cynthia Olson on December 7, 1941, was $222,000.

The plaintiff also claims reimbursement for the cost of marine insurance. The charter contract required the owner to carry insurance to the extent of $200,000. The cost of such insurance for the six-month period of the charter was the sum of $7,397.26. The contract further provided that the amount of the premium "shall be added to the charter rate hereinabove specified to be paid by the charterer." It also provided that the charterer should assume all other risks, including war risk.

■ In the light of these provisions, we think the plaintiff is entitled to recover the amount expended by it for insurance, as provided for in the charter contract, for the six-month period covered by such contract.

The plaintiff is entitled to recover the sum of $222,000, plus the amount of the insurance premiums paid, in the sum of $7,397.26, a total of $229,397.26. It is so ordered.

MADDEN, WHITAKER, and LITTLETON, Judges, concur.

WHALEY, Chief Justice, took no part in the decision of this case.